# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**Andra F., Petitioner Below,**
**Petitioner**

**vs)  No. 15-0445** (Upshur County 11-D-164)

**Anthony H., Respondent Below,**
**and Daniel Q. and Mildred Q.,**
**Intervenors Below,**
**Respondents**

**FILED**

**February 16, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Andra F., by counsel Robert J. O'Brien, appeals the Circuit Court of Upshur County's April 9, 2015, order refusing her petition for appeal from the family court.[1] Respondents, and intervening paternal grandparents below, Daniel Q. and Mildred Q. (hereinafter referred to as "respondents"), by counsel Shannon R. Thomas, filed a response and a supplemental appendix. The guardian ad litem, David L. Orndorff, filed a response on behalf of the children supporting the circuit court's order. Petitioner filed a reply. On appeal, petitioner alleges that the family court erred in ignoring the other parties' unfit behavior and ignoring her own disapproval of the children living in the grandparent's home. Petitioner further alleges that the parties have ignored the family court's final order; that prior guardian ad litem Paula Cunningham's testimony was unjust; that accepting the grandparents as psychological parents is a "flawed concept;" that the Tri-County Visitation Center's restrictions on her parenting time constitutes a violation of her constitutional rights; and that the current guardian ad litem in these proceedings acted inappropriately.[2]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case.  *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W.Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]On appeal, respondents Daniel Q. and Mildred Q. raise a cross-assignment of error and argue that the family court erred in improperly obtaining evidence, sua sponte, after the close of evidence without notice to the parties and without offering them an opportunity to present evidence in response. However, respondents do not cite to a single case, statute, rule, or other authority to support their argument. Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure requires that

> [t]he brief must contain an argument exhibiting clearly the points of fact and law
> presented, the standard of review applicable, and *citing the authorities relied on . .*
(continued . . . )

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The parents, Anthony H. and petitioner Andra F., had two children, A.H.-1 and A.H.-2. According to the family court, the parties, including petitioner and the paternal grandparents, all have a significant history involving domestic-related civil and criminal litigation. Specifically, respondent Daniel Q. pled no contest on April 19, 2011, to an assault involving the parents. According to the family court, the paternal grandparents "have had a troubled past marriage and relationship," but noted that most of the resulting litigation preceded the children's birth. According to the family court, following the birth of A.H.-2 in November of 2010, petitioner utilized third parties "to a significant extent" to care for the children. In fact, the family court found that the children spent a significant amount of time with respondents.

In November of 2012, petitioner and the father entered into an agreed parenting plan, whereby the father was the primary residential parent. At the time, the father lived with respondents, though he worked away from the home during the week and was at home occasionally on weekends. The family court entered an agreed order regarding the parenting plan in January of 2013. As to petitioner, the agreed order allowed her to exercise parenting time on alternating weekends. The father was also ordered to pay child support to the mother in the amount of $177.40 per month.[3]

---

. [and] must contain appropriate and specific citations to the record on appeal[.] The Court may disregard errors that are not adequately supported by specific references to the record on appeal.

(emphasis added). Additionally, in an Administrative Order entered December 10, 2012, *Re: Filings That Do Not Comply With the Rules of Appellate Procedure*, then-Chief Justice Menis E. Ketchum specifically noted in paragraph two that "[b]riefs that lack citation of authority [or] fail to structure an argument applying applicable law" are not in compliance with this Court's rules. Further, "[b]riefs with arguments that do not contain a citation to legal authority to support the argument presented and do not 'contain appropriate and specific citations to the . . . record on appeal . . .' as required by rule 10(c)(7)" are not in compliance with this Court's rules. Here, respondents' brief in regard to their cross-assignment of error is inadequate as it fails to comply with the administrative order and the West Virginia Rules of Appellate Procedure. Thus, we decline to address respondents' cross-assignment of error as it was not properly developed on appeal.

[3]Sometime after this order, petitioner gave birth to a third child with father Forrest R. That child is not at issue in this matter.

2

In September of 2013, petitioner filed a motion for temporary relief and a petition for contempt in the family court. Thereafter, the family court appointed Paula Cunningham as the children's guardian ad litem. In December of 2013, respondents moved to intervene in the proceedings. Thereafter, because of continued problems contacting petitioner and also issues surrounding her behavior with the children and on social media, the guardian moved to limit petitioner's visitation. The family court held a hearing on this motion and ultimately limited petitioner's visitation.

In June of 2014, Paula Cunningham was removed as guardian ad litem for the children because of concerns over her own personal litigation and her continuing credibility. She was replaced by David L. Orndorff. In August of 2014, the family court held a hearing on whether the intervening paternal grandparents are psychological parents to the children. Following this hearing, the family court granted respondents status as psychological parents.

The family court held a hearing on placement for the children in November of 2014. Ultimately, the family court ordered respondents to be the primary residential parents and awarded the biological parents structured visitation. The family court also ordered that the parties must ensure that the children receive counseling and that all parties must submit to a psychological evaluation. Thereafter, petitioner appealed to the circuit court in February of 2015. In April of 2015, the circuit court denied petitioner's appeal. It is from this order that petitioner appeal.

We have previously established the following standard of review:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W.Va. 474, 607 S.E.2d 803 (2004). To begin, the Court notes that it will not address petitioner's assignment of error related to allegations that certain parties have not complied with aspects of the family court's final order. Specifically, petitioner argues that respondents have not complied with the family court's direction that all parties complete an intervention program for perpetrators of domestic violence as was directed in the final order appealed to the circuit court. This Court has often held that a party must assert a right below to preserve the issue for appellate review. *See State v. Jessie*, 225 W.Va. 21, 27, 689 S.E.2d 21, 27 (2009) ("general rule is that nonjurisdictional questions not raised at the circuit court level will not be considered to the first time on appeal") (citation omitted). Because this allegation is more appropriate for consideration on a motion for contempt in the family court below, we decline to address the same on appeal.

Next, the Court finds no error in regard to the allegation that the family court ignored acts by respondents that allegedly render them unfit to have custody of the children. In support of this assignment of error, petitioner relies heavily on allegations regarding respondents' past criminal conduct. However, the record is clear that the family court was presented with this evidence and

3

considered it in rendering its final decision. As noted above, the family court specifically found that "the parties have significant history relating to domestic related civil and criminal litigation," and further that respondents have had "a good deal of domestic civil and criminal litigation between them." However, the family court also found that the litigation between respondents mostly preceded the children's birth. As such, it is clear that the family court did not ignore these acts, as petitioner alleges. Instead, the family court considered these factors and made its ruling based upon the entirety of the evidence. That it ultimately failed to make the finding that petitioner believes is accurate is not evidence that the relevant factors were not considered. For these reasons, we find no error in this regard.

As to petitioner's next assignment of error, the Court finds no error in the testimony from Paula Cunningham, the prior guardian ad litem below. On appeal, petitioner alleges that Ms. Cunningham's testimony somehow prejudiced her because, prior to testifying, Ms. Cunningham was removed as guardian ad litem due to her own pending litigation that the family court found "may [have] affect[ed] her participation and credibility . . . ." In support of this argument, petitioner cites extensively to alleged conduct by the guardian that is wholly unrelated to the proceedings at issue. However, petitioner cites to no authority that would render Ms. Cunningham's testimony inadmissible. Instead, this assignment of error is best discussed in terms of credibility, as petitioner has alleged Ms. Cunningham's actions rendered her unfit to perform her duties as guardian ad litem. On this issue, we have consistently emphasized that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations." *Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997). Petitioner cites to no testimony from Ms. Cunningham that is in any way unreliable. In fact, the opposite is true. Regardless of whatever issues occurred in Ms. Cunningham's personal life, the current guardian ad litem for the children agreed with Ms. Cunningham's recommendations and argues on appeal that her testimony was "quite probative." As such, we decline to second guess the family court's credibility determinations on appeal, and find no error in this regard.

Next, the Court finds no error in regard to petitioner's assignment of error concerning respondents' status as psychological parents. It is unclear on appeal whether petitioner is arguing that the very notion of a psychological parent in the abstract is a "flawed concept" or that respondents specifically did not meet the elements to be considered psychological parents, but either way she is entitled to no relief in this regard. First, the Court declines to reconsider our prior holdings concerning psychological parents and denies petitioner relief to the extent she is urging the same. We have previously held that

> "[a] psychological parent is a person who, on a continuing day-to-day basis, through interaction, companionship, interplay, and mutuality, fulfills a child's psychological and physical needs for a parent and provides for the child's emotional and financial support. The psychological parent may be a biological, adoptive, or foster parent, or any other person. The resulting relationship between the psychological parent and the child must be of substantial, not temporary, duration and must have begun with the consent and encouragement of the child's legal parent or guardian. To the extent that this holding is inconsistent with our

4

prior decision of *In re Brandon L.E.*, 183 W.Va. 113, 394 S.E.2d 515 (1990), that case is expressly modified." Syl. Pt. 3, *In re Clifford K.*, 217 W.Va. 625, 619 S.E.2d 138 (2005).

Syl. Pt. 9, *In re Antonio R.A.*, 228 W.Va. 380, 719 S.E.2d 850 (2011). The evidence introduced in the family court below clearly supports respondents' status as psychological parents. Specifically, the family court found that respondent grandparents "have clearly provided for the daily care of the children, including medical, dental, educational, bedtime routines, providing meals and bearing all of the financial obligations of the children without assistance from the parents since December of 2012." The family court added that the "evidence also supported a substantial parenting role prior to that time, including the time in which [petitioner] was incarcerated." Further, the family court found that petitioner consented to the relationship between respondents and the children by granting custody to the father with full knowledge that he lived with respondents and that they would provide substantial care for the children. In fact, the family court found that petitioner failed to object to respondents' role as primary caretakers for the children and knowingly left the children with respondents "for lengthy time periods, knowing they were providing for them as psychological parents." Additionally, testimony below established that the children had a significant bond with respondents. For these reasons, it is clear that the family court did not err in granting respondents psychological parent status.

Petitioner also argues in support of this assignment of error that the family court erred in failing to include a determination of fitness in its analysis of whether respondents qualified as psychological parents. This argument, however, is misplaced. Pursuant to the holding cited above, fitness to have custody of a child is not a consideration in determining whether an individual qualifies as a psychological parent. While that consideration would be integral in determining whether a psychological parent should have continued custody of a child, it has no bearing on the level of care the individual has provided in the past necessary to be considered a psychological parent. In this matter, the family court ultimately found respondents were fit to be awarded primary residential custody of the children, and there is nothing in the record to suggest this determination was improper. Similarly, petitioner cites to no evidence that establishes respondents are unfit to parent the children. While it is true that respondents have criminal histories, the family court specifically found those prior instances of criminal conduct to be so remote as to have no bearing on their fitness to parent the children at issue. Further, the family court found that "Child Protective Services . . . has no concerns about [respondents'] home."

Conversely, petitioner's own actions necessitated limited contact with the children. Specifically, the family court found that petitioner's actions were having a detrimental effect on at least one child who was anxious about the proceedings due to petitioner talking to the children about the litigation and their father's incarceration. Further, it was noted that petitioner refused to cooperate with the guardian ad litem's investigation into the matter. For these reasons, the Court finds no error in regard to the family court's determination as to the permanent placement and custodial arrangement for the children.

Next, the Court finds no error in the family court ordering that the Tri-County Visitation Center supervise petitioner's visitations with the children. As noted above, petitioner's own actions necessitated this restriction on her parenting time because of the detrimental effect on the

children and difficulties arising during custody exchanges of the children. In addition to talking to the children about their father's incarceration, petitioner also showed the children a photograph that depicted the father in custody. Further, petitioner was involved in an altercation with the father's girlfriend that the guardian believed "caused great concern" for the children's wellbeing. Additionally, supervised visitation was necessary because of petitioner's failure to provide the parties with her accurate address. According to the family court, shortly before ordering supervised visitation, petitioner relocated and failed to provide any information about her living arrangements to the guardian or the family court. As such, the family court was unaware where petitioner would exercise visitation with the children. For these reasons, the Court finds no error in the family court ordering supervised visitation with petitioner during these proceedings, especially in light of petitioner's refusal to cooperate with the family court in exercising her visitation rights.

Moreover, petitioner argues that certain restrictions on her parenting time constitute a violation of her constitutional rights. Specifically, she argues that the Tri-County Visitation Center allowed her only one hour of visitation with the children and would not allow her to visit with the children outside of the facility. The Court, however, does not agree. While it may be true that the family court did not specifically limit petitioner's parenting time to one hour in its order, it did order that Tri-County Visitation Center was to supervise the visitation. Obviously this indicated that petitioner did not have unfettered access to the children and she was subject to the restrictions imposed by the supervising entity. The Court finds that petitioner suffered no violation of her constitutional rights in the reasonable restrictions imposed on her supervised visitation with the children.

Next, petitioner argues that the current guardian ad litem to this matter acted inappropriately after he was appointed to replace Paula Cunningham, the prior guardian for the children. Specifically, petitioner argues that the guardian did not seek an opportunity for petitioner to regain custody of her children. However, petitioner's argument on this issue ignores both the guardian's duty in these proceedings and also the evidence introduced below. Pursuant to Rule 47(c) of the Rules of Practice and Procedure for Family Court, "[t]he guardian ad litem acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child." Petitioner has cited to no authority that dictates that the newly-appointed guardian had a duty to seek the children's return to her custody. In fact, the evidence introduced in this case established that such action would be detrimental to the children. As addressed above, petitioner's limited interactions with the children during the proceedings had a negative impact on the children such that the family court had to impose supervised visitation. As such, the guardian was required to advocate for the children's best interests, which necessitated remaining in their placement with respondents. For these reasons, the Court finds no error in regard to the guardian's actions in the proceedings below.

Finally, petitioner argues that the family court did not acknowledge her disapproval regarding her children's extended living situation with respondents, nor the fact that she never executed a writing that transferred custody to them. To the first point, the family court did address petitioner's implicit approval of the parenting situation by finding that she knowingly allowed respondents to provide substantial care for the children without seeking to regain custody of them. Noting that petitioner argued she never voluntarily relinquished custody of the

children, the family court nevertheless found that she agreed to give the father residential custody with the full knowledge that the father lived with respondents and relied heavily upon them to perform care-taking functions because of his employment. Moreover, the family court found that petitioner allowed this arrangement to occur for years without seeking to modify custody, all the while allowing the children to form a substantial bond with respondents.

In support of this assignment of error, petitioner relies heavily on our prior holding, wherein we stated that if a parent intends to voluntarily transfer either permanent or temporary custody of a child to a third party, then a document effecting that transfer should expressly provide that it is the parent's intention to do so. *See* Syl. Pts. 4 and 5, *Overfield v. Collins*, 199 W.Va. 27, 483 S.E.2d 27 (1996). Petitioner's reliance on this holding, however, is misplaced. In a subsequent custody matter, this Court noted that

> "[i]n *Overfield* . . . , this Court did not hold that a circuit court may never grant permanent custody of a minor child to a party other than one of the child's natural parents. Instead, we indicated that a circuit court may not take such action where there is no proof that the petition requesting such action was served upon the child's mother and where a notice of the hearing on such matter was not served upon the mother."

*Ronald James G. v. Gilda Gae C.*, 204 W.Va. 587, 589, 514 S.E.2d 818, 820 (1999). As such, it is clear that the *Overfield* holding is not directly analogous to the matter on appeal.

More importantly, a determination of whether an individual constitutes a psychological parent does not require any written transfer of custody, either temporary or permanent, to that individual by the parent. It requires only that the parent allow the individual to assume the role of psychological parent with his or her consent and encouragement. As noted above, petitioner actively consented to and encouraged respondents' relationship as primary caregivers to the children. For these reasons, we find no error in this regard.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** February 16, 2016

**CONCURRED IN BY:**

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II